# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| TANISHA PETTWAY, | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 14-6334 |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant | : | |

_____

**Henry S. Perkin, M.J.**                                           **April 8, 2016**

## REPORT AND RECOMMENDATION

Plaintiff, Tanisha Pettway ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") provided under Titles II and XVI of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-433; 42 U.S.C. §§ 1381-1383f. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (Dkt. No. 11) filed March 27, 2015, Defendant's Response to Request for Review of Plaintiff (Dkt. No. 12) filed April 27, 2015, and Plaintiff's Reply Brief (Dkt. No. 13) filed May 6, 2015. For the reasons that follow, it is recommended that the relief sought by Plaintiff be denied and the decision of the Commissioner of Social Security be affirmed.

## I.   <u>PROCEDURAL HISTORY</u>

On December 10, 2012, Plaintiff filed applications for DIB and SSI, alleging disability since November 1, 2003, as a result of depression, anxiety, and back pain.  (Record at 13, 36, 39-40, 50, 60, 70, 74, 83, 176-177, 178-186, 220, 233, 236, 247, 251, 281, 286, 435, 442, 448, 707, 712-713, 718, 1278.)  At the hearing, Plaintiff's alleged onset date of disability was amended to October 31, 2011.  (Record at 13, 35.)  Plaintiff's earnings record shows that she has acquired sufficient quarters of coverage to remain insured through March 31, 2012, which is referred to as the date last insured.  (Record at 13, 247, 284, 718.)  Accordingly, in order to be eligible for DIB benefits, Plaintiff must prove that she became disabled on or before March 31, 2012.  (Record at 15, Finding No. 1.)

Plaintiff's claims for benefits were denied at the initial review level by letter dated February 22, 2013.  (Record at 13, 69, 70-81, 82, 83-91, 100-103, 104-107.)  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Record at 110-111, 112-118, 119-129.)  A hearing was held on April 17, 2014, at which Plaintiff, who was represented by counsel, appeared and testified.  (Record at 4, 7, 28-48, 108-109, 111, 130-151, 153-154, 159-164, 165-166.)  An impartial vocational expert ("VE"), Michael J. Kibler, also appeared and testified at the administrative hearing.  (Record at 28, 44-47, 137-138, 147-148, 150-151, 155-158.)

Having considered evidence of Plaintiff's impairments, the ALJ issued an unfavorable decision on April 23, 2014 in which he found that Plaintiff, given her age, education, work experience, and residual functional capacity, was capable of performing a significant number of jobs in the regional and national economies.  (Record at 17-21, Finding Nos. 5-10.)

Thus, the ALJ concluded that Plaintiff could not be found disabled within the meaning of the Social Security Act. (Record at 21-22, Finding No. 11.)

Plaintiff timely requested review of the ALJ's decision, which was denied by the Appeals Council on September 12, 2014. (Record at 1-3, 4, 7, 8-9, 300-301.) As a result, the ALJ's decision of April 17, 2014 became the final decision of the agency.

Plaintiff initiated this civil action on November 3, 2014, seeking judicial review of the Commissioner's decision that she was able to perform a significant number of jobs in the regional and national economies, and thus was not entitled to DIB or SSI. The matter was subsequently referred to this Magistrate Judge for preparation of a report and recommendation on June 2, 2015.

## II.   FACTS

Plaintiff, born on November 4, 1981, was thirty-two years old[1] when the ALJ issued his decision in this matter. (Record at 22, 31, 49, 50, 60, 69, 82, 167, 169, 176, 215, 247, 284.) She has an associates degree in graphic design, and past work experience as a machine operator and housekeeper. (Record at 32, 45, 57, 67, 80, 220, 238-246, 251, 252, 257-264, 435, 439, 709.) Plaintiff performed some housekeeping work after her alleged disability onset date, but this work did not rise to the level of substantial gainful activity. (Record at 15, 220, 221, 435.) She resides with her husband and five children,[2] and indicated that she provides care for all

---

[1]      Because Plaintiff qualified as a "younger person" under the regulations, her age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963(b)(2000). The Court must "cautiously scrutinize the employment prospects of so young an individual before placing [her] on the disability rolls." Lockley v. Barnhart, No. 05-5197, 2006 U.S. Dist. LEXIS 29722, at *2 n.1 (E.D. Pa. May 16, 2006)(Baylson, J.), quoting, McLamore v. Weinberger, 530 F.2d 572, 574 (4th Cir. 1976).

[2]      At the hearing, Plaintiff indicated that her children were ages six, nine, eleven, thirteen, and eighteen. (Record at 32.)

of them.  (Record at 31-32, 168, 177, 182, 228, 229, 266, 273, 291, 709.)

In addition to reviewing the transcript of the administrative hearing and the administrative decision in this case, this Court has independently and thoroughly examined all of the medical records and disability reports.  We will not further burden the record with a detailed recitation of the facts.  Rather, we incorporate the relevant facts in our discussion below.

## III.   LEGAL STANDARD

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  Richardson v. Perales, 402 U.S. 389, 407 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 113 S.Ct. 1294 (1993).  Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. § 423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

4

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy.  See id. § 404.1520(b)-(f).

Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431-32 (3d Cir. 1999).  The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. Poulos v. Comm'r of Social Sec., 474 F.3d 88, 92 (3d Cir. 2007.)

## IV.  ALJ DECISION AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff is alleging disability since October 31, 2011 as a result of depression, anxiety, and back pain.  (Record at 15, 35, 36, 39-40, 50, 60, 70, 74, 83, 220, 233, 236, 251, 281, 286, 435, 442, 448, 707, 712-713, 718, 1278.)  The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her

impairments.[3]

In her motion, Plaintiff asserts that she met the criteria to be found disabled under Listing 12.04 (affective disorders) because she has marked limitations in both her social functioning and concentration, persistence, and pace.  Plaintiff also asserts that the ALJ erred with respect to his consideration of the medical evidence of record.  Plaintiff further avers that the ALJ erred with respect to his residual functional capacity determination and credibility assessment.  The issue before this Court, however, is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.  Based on an independent review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for his decision.  Accordingly, we conclude that the ALJ's decision is supported by substantial evidence of record.  We will, therefore, recommend that Plaintiff's motion for summary judgment and request for relief be denied.

---

[3]       The ALJ proceeded through all of the steps, finding that: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (2) Plaintiff has an impairment or combination of impairments that are severe (back pain and depression); (3) Plaintiff's impairments do not meet or medically equal the criteria of any of the listings in Appendix 1, Part 404, Subpart P, Regulations No. 4; and (4) Plaintiff retains the residual functional capacity to perform light work, except that she must be allowed to alternate sitting and standing at will, is limited to occasional climbing of stairs, balancing, stooping, kneeling, crouching and crawling, must never climb ladders or perform overhead reaching with her left upper extremity, is limited to simple, routine and repetitive tasks in a work environment free from fast paced production involving only simple work related decisions with few, if any, work place changes, no interaction with the public, limited to occasional interaction with co-workers, with no tandem tasks, and limited to occasional supervision.  (Record at 15-20, Finding Nos. 2-5.)  The ALJ concluded that although Plaintiff was unable to perform any past relevant work, there were a significant number of jobs in the regional and national economies that she could perform given her age, education, work experience and RFC. (Record at 20-21, Finding Nos. 6-10.)  The ALJ concluded that Plaintiff was not disabled at any time from her onset date of October 31, 2011 through the date of his decision.  (Record at 21, Finding No. 11.)

## V.  **DISCUSSION**

Disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual.  See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  Plaintiff must establish that her impairments result in functional limitations so severe they precluded her from engaging in any substantial gainful activity.  See Dupkunis v. Celebrezze, 323 F.2d 380 (3d Cir. 1963); Gardner v. Richardson, 383 F. Supp. 1 (E.D. Pa. 1974).

This Court has conducted an independent and thorough review of the record, and we find substantial evidence in support of the ALJ's decision.  In this case, although Plaintiff alleges a combination of disabling impairments, she has failed to show that these impairments, alone or in combination, result in functional limitations that preclude substantial gainful activity. Plaintiff's lack of functional limitations established by objective evidence support the ALJ's conclusion that Plaintiff is not entitled to DIB or SSI benefits.

### **Substantial Evidence Supports the ALJ's Listings Determination.**

Plaintiff contends that the ALJ incorrectly determined that her combination of impairments does not meet or equal Listing 12.04.[4]  More specifically, Plaintiff avers that she has

---

[4]      12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome . . . or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or

marked limitations in her social functioning and her concentration, persistence, or pace.  (Pl. Br. at 11-14.)

Based on our thorough and independent review of the record, we conclude that the record as a whole did not support a finding that Plaintiff's impairments were of listing-level severity.  As more fully detailed below, the ALJ correctly determined that the evidence failed to establish the presence of all of the required criteria for Listing 12.04 because throughout the decision, the ALJ thoroughly discussed the objective medical evidence available to him as well as Plaintiff's activities, all of which supported the ALJ's finding that Plaintiff's impairments were not disabling under the listings.  (Record at 16-20.)

In order to meet a listing, a claimant must show that all of the criteria of that listing are met.  <u>Sullivan v. Zebley</u>, 493 U.S. 512, 530 (1990).  Meeting only some criteria of a

---

f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 (2005).

listing "no matter how severely, does not qualify." Id.  Whether a section is met depends not only on the diagnosis, but also on medical findings consisting of symptoms, signs and laboratory findings which meet the required level of severity of the impairment in Appendix 1.  20 C.F.R. § 416.925(c) (2005).  In this case, the objective medical evidence demonstrates that Plaintiff does not meet the criteria of Listing 12.04.

        The ALJ has a well-established duty to provide an explanation for the reasons underlying his ultimate decision.  See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which hit rests"); see also Young-El v. Apfel, 2000 WL 190237, *3 (E.D. Pa. Feb. 4, 2000)(quoting Cotter).  Such explanation is essential to meaningful judicial review. Cotter, 642 F. 2d at 704.  Cf. Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000) ("[t]his Court requires the ALJ to set forth reasons for his decision.").

        In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Court of Appeals for the Third Circuit held that it is not necessary for the ALJ to use particular language or adhere to a particular format when conducting his step three analysis.  Rather, the ALJ need only develop the record and explain the findings sufficiently enough in his decision to permit meaningful judicial review.  Id.  In Jones, the Court reviewed the ALJ's decision in its entirety and found that substantial evidence supported the ALJ's step three finding. Id. at 505 (stating that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing. . .").

        Although Plaintiff takes issue with the ALJ's determination at step three that she did not satisfy 12.04 of the listings, we conclude that the objective medical evidence

demonstrates that Plaintiff does not meet the part B or part C criteria of Listing 12.04.  To satisfy

the part B criteria of either Listing, a claimant's mental impairment must result in marked

restrictions in activities of daily living; or marked difficulties in social functioning; or marked

difficulties in maintaining concentration, persistence or pace; or repeated episodes of

decompensation, of extended duration.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04

(2005).  Further, the B criteria requires that a claimant demonstrate at least two of these

symptoms, which Plaintiff has not done.

      We find substantial evidence supports the ALJ's determination that Plaintiff had

only mild limitation of activities of daily living; moderate limitation in maintaining social

functioning; moderate limitation of concentration, persistence and pace, and no episodes of

decompensation.  (Record at 16-17.)  We note that the ALJ properly relied on the testimony of

Plaintiff and the documentary medical evidence in the record when assessing Plaintiff's

limitations of functioning in the part B criteria.  (Record at 16-20.)

      More specifically, with respect to the paragraph B criteria with which Plaintiff

currently takes issue, the ALJ noted as follows:

> In social functioning, the claimant has moderate
> difficulties.  Although she alleged that she has problems
> getting along with family, friends, neighbors or others, the
> claimant indicated that she shops in stores (Exhibit 4E).
> She also indicated that she sometimes goes to church
> (Exhibit 13E).
>
> With regard to concentration, persistence or pace, the
> claimant has moderate difficulties. Although she alleged
> that she does not finish what she starts, the claimant noted
> that she is able to pay bills and use a checkbook/money
> orders (Exhibit 4E).  Dr. Gransee stated that the claimant's
> thought processes appeared to be reasonably clear, logical

and goal-directed (Exhibit 6F).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.  Dr. Gransee indicated that the claimant has apparently never attempted suicide (Exhibit 6F).  Thomas Paquette, Psy.D., an examining psychologist, noted that claimant has had no psychiatric hospitalizations (Exhibit 11F).

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(Record at 16-17.)

As correctly noted by Defendant, Plaintiff's self-reported activities and the medical record illustrate that Plaintiff has *not* had marked restrictions in activities of social functioning, or in maintaining concentration, persistence or pace.  (Def. Br. at 5-6.)  More specifically, with respect to her alleged mental impairments, the ALJ noted as follows:

The undersigned finds the claimant has depression based on Dr. Hill's diagnosis (Exhibit 2F). Dr. Gransee indicated that the claimant reported that she is always irritable (Exhibit 6F).  Dr. Gransee also indicated that the claimant said that she could not complete the serial sevens (Exhibit 6F).  Dr. Paquette stated that the claimant has some difficulty with short-term memory (Exhibit 11F).  The claimant testified that she hears things and that she has anxiety attacks.  The records from Lancaster General Hospital reveal that the claimant typically drinks a 6-pack of beer daily (Exhibit 15F).  Despite the claimant's depression, the records from Lancaster General Hospital show that the claimant has normal behavior and normal mood and affect (Exhibit 2F). Dr. Gransee noted that the claimant's thought processes appeared to be reasonably clear, logical and goal-directed (Exhibit 6F).  The records from Lancaster General Hospital

> on September 3, 2013 indicated that the claimant was
> working (Exhibit 22F).  John Chuma, Psy.D., a treating
> psychologist, stated on September 24, 2013 that the
> claimant was discharged for non-compliance (Exhibit 18F).
> Therefore, there is some question regarding the claimant's
> seriousness in addressing her depression.
>
> .        .        .
>
> The undersigned generally assigns great weight to the
> Psychiatric Review Techniques and Mental Residual
> Functional Capacity Assessments of Dr. Small, Sharon
> Tarter, Ph.D, and Melissa Diorio, Psy.D. (non-examining
> DDS psychologists) (Exhibits 2A, 4A and 6A). The
> opinions of Dr. Small, Dr. Tarter, and Dr. Diorio that the
> claimant has no worse than moderate limitations are
> supported by the record as a whole and are consistent with
> Dr. Gransee's statement that the claimant's thought
> processes appeared to be reasonably clear, logical and
> goal-directed (Exhibit 6F).  The undersigned generally
> assigns great weight to Dr. Gransee's Medical Source
> Statement (Exhibit 6F).  Dr. Gransee's opinion that the
> claimant has no worse than moderate restrictions is
> supported by the record as a whole and is consistent with
> Dr. Gransee's statement that the claimant's thought
> processes appeared to be reasonably clear, logical and
> goal-directed (Exhibit 6F).

(Record at 19.)

Specifically, we note, as does Defendant, that with respect to social functioning, the evidence of record demonstrated that despite Plaintiff's alleged problems getting along with family, friends, and neighbors, she acknowledged that her depression did not prevent her from shopping in public.  (Record at 16, 231, 268.)  In addition, she went to church on occasion, which necessarily involved functioning among other people.  (Record at 16, 291.)  Moreover, even though she claimed she had issues with her family, she was married, lived with her husband and five children, cared for her children everyday, and spent time with her family, including laughing

and talking on the telephone.  (Record at 31, 168, 177, 182, 228-229, 266-269, 273, 291, 709.)

Plaintiff also stated that she attended various appointments on a daily basis, and as long as she

felt respected, she had no problems getting along with authority figures.  (Record at 229, 234.)

Moreover, three state agency medical consultants reviewed the evidence and found that Plaintiff

had moderate, not marked, limitations in social functioning.  (Record at 54, 64, 74-75.)  Based on

our review of the record, we concur with the ALJ's determination as to Plaintiff's social

functioning.

              With respect to concentration, persistence, and pace, the record demonstrates that

Plaintiff could concentrate long enough to pay bills and use a checkbook; take care of all the

basic needs of her children, including helping them with their homework; prepare three-course

meals; complete house chores; go grocery shopping; and use public transportation.  (Record at

229-231, 266, 267, 274, 275, 292.)  According to her husband, Plaintiff was able to follow both

written and spoken instructions.  (Record at 270.)  Similarly, Dr. Jonathan Gransee, a

psychologist, examined Plaintiff after her alleged disability onset date and observed that, despite

her subjective complaints about concentration, she was alert and fully oriented and her thought

processes were reasonably clear, logical, and goal-directed.  (Record at 440.)  Moreover, Dr.

Granese concluded that Plaintiff's ability to sustain her attention, concentration, pace was within

normal limits such that she would be able to perform satisfactorily in an eight hour work day, and

forty hour work week.  (Record at 443.)  As with social functioning, the three state agency

medical consultants who reviewed her records also found, as the ALJ did, that she experienced

only moderate, not marked, limitations in concentration, persistence, and pace.  (Record at 54,

64, 74-75.)  Substantial evidence supports the ALJ's finding, and based on our review of the

record, we concur with the ALJ's determination as to Plaintiff's concentration, persistence, or pace.

Finally, the ALJ appropriately concluded that Plaintiff did not experience any episodes of decompensation.  (Record at 17.)  Plaintiff did not have any psychiatric hospitalizations or intensive outpatient treatments, and received only limited mental health treatment during the relevant period, which treatment consisted solely of therapy visits and medication prescriptions obtained from her primary care physician.  (Record at 17, 707, 713.) Plaintiff had no history of suicide attempts.  (Record at 17, 440.)

We conclude that the ALJ provided an adequate discussion of the objective medical evidence and Plaintiff's activities throughout his decision.  (Record at 16-20.)  Plaintiff's statements alone cannot establish that she meets or medically equals Listing 12.04.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating it is claimant's burden to present medical findings that show her impairment matches or is equal in severity to a listed impairment).  The ALJ's decision, when read as a whole, demonstrates that he appropriately considered Listing 12.04, and found that the criteria were not met or equaled.  Therefore, we find substantial evidence in support of the ALJ's determination that Plaintiff's impairments did not meet or equal Listing 12.04, and Plaintiff's arguments to the contrary are without merit.

14

**Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Residual**
**Functional Capacity With Respect to Limitations in Concentration, Persistence, or Pace.**

The ALJ has the responsibility to determine a claimant's residual functional

capacity[5] based on his review of the administrative record.  See 20 C.F.R. §§ 404.1527(e)(2),

404.1546(c).  In assessing a claimant's RFC, the ALJ will consider all of a claimant's medically

determinable impairments, as well as all of the relevant evidence pertaining to those

impairments, including medical records, statements from medical sources, and descriptions by

the claimant of her limitations.  20 C.F.R. §§ 404.1545(a)(3), 404.1545(a)(4).  While the ALJ

must assess the RFC that includes all of Plaintiff's limitations, a claimant's statements about her

impairments will not alone serve to establish disability.  20 C.F.R. § 404.1529(a).  Subjective

symptoms must be supported by objective evidence.  Hartranft v. Apfel, 181 F.3d 358, 362 (3d

Cir. 1999).  That is, the ALJ's RFC determination must include all of Plaintiff's limitations, but

only those limitations that are fully credible, or supported by objective evidence, need be

included.[6]

---

[5]       Residual functional capacity ("RFC") measures

>    what an individual can still do despite his or her limitations.  RFC is an
>    administrative assessment of the extent to which an individual's
>    medically determinable impairment(s), including any related symptoms,
>    such as pain, may cause physical or mental limitations or restrictions
>    that may affect his or her capacity to do work-related physical and
>    mental activities.

SSR 96-8p, 61 Fed. Reg. 34474.  An RFC assessment must be based on all of the evidence in the case record.  20 C.F.R. § 416.945(a); SSR 96-7p, 61 Fed. Reg. 34483; SSR 96-8p.

[6]       Though hypotheticals posed to a VE must accurately identify "all of a claimant's impairments, [only those impairments] that are supported by the record" must be reflected in the hypothetical posed to the VE.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987), citing, Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(citation omitted).

With respect to his determination of the Plaintiff's RFC, the ALJ explicitly

concluded that

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except she must be able
> to alternate between sitting and standing at will. The
> claimant is limited to occasional climbing of stairs,
> balancing, stooping, kneeling, crouching and crawling. She
> should never climb ladders or perform overhead reaching
> with her left upper extremity. The claimant's work is
> limited to simple, routine and repetitive tasks in a work
> environment free from fast paced production involving only
> simple work related decisions with few, if any, work place
> changes. The claimant should have no interaction with the
> public. She is limited to occasional interaction with
> co-workers, but with no tandem tasks. Moreover, the
> claimant is limited to occasional supervision.

(Record at 17, Finding No. 5.)

Plaintiff contends that the ALJ erred by failing to account for certain non-

exertional limitations noted by Plaintiff's medical providers.  (Pl. Br. at 14-15.)  More

specifically, Plaintiff avers that the ALJ erred by failing to account for her moderate limitation in

concentration, persistence, and pace.  (Pl. Br. at 14-15.)  In so doing, Plaintiff relies on Ramirez

v. Barnhart, 372 F.3d 546 (3d Cir. 2004), and alleges that a restriction to simple one-or-two-step

tasks does not adequately encompass noted deficiencies in concentration, persistence, or pace.

(Pl. Br. at 14.)  In Ramirez, the ALJ took the claimant's mental impairment into account in the

hypothetical by limiting her to simple one- or two-step tasks, not requiring her to travel outside

the workplace, and providing her with a reasonable opportunity to make and receive personal

phone calls.  Id. at 554.  The Third Circuit, however, held that it was "not satisfied that these

16

limitations take into account the ALJ's own observations (both in her opinion and in the PRTF) that Ramirez *often* suffered from deficiencies in concentration, persistence, or pace." <u>Id.</u> (emphasis in original).

As correctly noted by Defendant, <u>Ramirez</u> is distinguishable in that the ALJ did not merely limit Plaintiff's RFC to simple, repetitive tasks. Instead, in addition to restricting her to simple, routine, and repetitive tasks, the ALJ specifically accounted for Plaintiff's moderate limitations in concentration, persistence, or pace, by including in Plaintiff's RFC the restriction that she must be "free from fast paced production."  (Record at 17.)  <u>See</u>, <u>e.g.</u>, <u>Rodgers v. Colvin</u>, No. 13-75, 2014 WL 4748907, at *1 n.1 (W.D. Pa. September 24, 2014) (distinguishing <u>Ramirez</u>, as "the mental limitations found by the ALJ in the RFC [in this case] were far more extensive and specific," including a restriction on "fast-paced production") ; <u>Devault v. Astrue</u>, No. 13-155, 2014 WL 3565972, at *4 (W.D. Pa. July 18, 2014) ("the ALJ in <u>Ramirez</u> completely failed to include deficiencies in pace in his RFC hypothetical to the VE, unlike here, where the ALJ included the restriction that Plaintiff's workplace tasks be 'performed free of past pace production requirements'").  The ALJ further captured Plaintiff's limitations by restricting her to only "simple work related decisions" as well as "few, if any, work place changes."  (Record at 17.)  Accordingly, because the ALJ's RFC is entirely different than the one the court reviewed in <u>Ramirez</u>, Plaintiff's reliance on that case is misplaced.  To the contrary, we conclude that the ALJ adequately accounted for Plaintiff's moderate limitations in concentration, persistence, or pace in his RFC determination.

### Substantial Evidence Supports the ALJ's Step Five Finding That Plaintiff Could Perform Work Existing in Significant Numbers in the National Economy.

In this matter, the ALJ determined that Plaintiff retains the residual functional capacity to perform light work except that she, *inter alia*, must be able to alternate between sitting and standing at will.  (Record at 17, Finding No. 5.)  Plaintiff asserts that remand is warranted on this basis because the ALJ failed to explain how often and for how long she would need to alternate positions.  (Pl. Br. at 15-17.)

As discussed above, the ALJ found that Plaintiff was precluded from performing her past relevant work.  (Record at 20, Finding No. 6.)  To determine whether she was capable of performing other substantial gainful activity given her RFC, the ALJ relied upon the testimony of a vocational expert.  We find this to be in accordance with Social Security Ruling ("SSR") 83-12, which requires an adjudicator to obtain VE testimony where the extent of erosion of the occupational base is not clear.

Testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments which are supported by the medical record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record.  Chrupcala, 829 F.2d at 1271.  It is not necessary for the ALJ to include facts that are supported by a claimant's subjective testimony only.  Id.  After considering the hypothetical that contained all of Plaintiff's established limitations in this matter, including the ALJ's determination that Plaintiff required work in which she could alternate sitting and standing at will, the VE identified the positions of small products assembler (light, unskilled),

electrical accessories assembler (light, unskilled), table worker (sedentary, unskilled), and final assembler (sedentary, unskilled), which met the at will sit-stand requirement.  (Record at 21, 45-46.)

We agree with Respondents (Def. Br. at 9-10) that there is nothing vague or ambiguous about the limitation to alternate between sitting and standing at will.  This restriction clearly permits the Plaintiff to alternate between sitting and standing whenever she wanted.  The VE did not suggest that he was confused about that limitation; in fact, he opined unequivocally that a person who needed to alternate between sitting and standing at will could nevertheless perform the jobs he identified.  (Record at 45-46.)

Moreover, Plaintiff offers no support for her argument on this point and, in fact, we find that other courts have rejected it.  See, e.g., Henderson v. Soc. Sec. Admin., 87 F. App'x 248, 252 (3d Cir. 2004) (upholding ALJ's reliance on VE testimony where hypothetical limited a person to "sitting and standing at will"); Nicholson v. Colvin, No. 14-1819, 2015 WL 1275365, at *10 (M.D. Pa. March 18, 2015) (rejecting exact same argument Plaintiff makes here).[7] Accordingly, we conclude that Plaintiff's argument is without merit.

---

[7]     More specifically, the District Court in Nicholson, concluded that the

ALJ's directive that the Plaintiff may sit or stand "at will" constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands. There is no indication that the VE was in any manner confused by this directive. Plaintiff's argument unaccountably suggests that the ALJ's directive would require the Plaintiff to sit and stand for specified periods of time. Plaintiff's interpretation of the ALJ's "sit/stand at will" requirement is simply inaccurate and the Court finds that the VE properly factored the "sit/stand at will" requirement into her analysis of what jobs the Plaintiff could perform. Accordingly, the VE's assessment of the Plaintiff's employability was appropriately credit by the ALJ.

Nicholson, 2015 WL 1275365, at *10.

Plaintiff's next assertion with respect to the ALJ's step five determination is that the ALJ should have incorporated her use of a cane into his RFC determination.  (Record at 16-17.)  As correctly noted by Defendant, however, "[a]n ALJ must find that an assistive device to ambulate be medically-required to include it as an exertional limitation."  Sanchez v. Colvin, No. 13-2479, 2014 WL 5147793, at *14 (M.D. Pa. Oct. 14, 2014) (citing Social Security Ruling 96-9p, 1996 WL 374185, at *7 (SSA) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . .").  (Def. Br. at 10.)

In this matter, we note that Plaintiff has not identified any medical documentation "establishing the need for a hand-held assistive device."  Although Plaintiff requested a script for a cane (Record at 486, 882), the objective medical evidence as detailed by the ALJ showed that she had only intermittent complaints of thoracic and lumbar pain, had a normal range of motion, had no numbness or tingling into her legs, was ambulatory, had normal coordination, and received significant relief with conservative, acupuncture treatment.  (Record at 18.)  In addition, Dr. Gransee observed that, although Plaintiff had a cane with her at the consultative examination, "it was not clear that she had a significant ambulation problem."  (Record at 435.)  In fact, even Plaintiff stated that she did not always use a cane to ambulate and was noted to be walking "without problems" at times.  (Record at 37-38, 234, 279, 489, 867, 874.)  In November 2013, a doctor observed that she was ambulating well.  (Record at 995.)

Accordingly, substantial evidence supports the ALJ's decision not to include Plaintiff's alleged use of a cane in the RFC assessment.  See, e.g., Cardona v. Comm'r of Soc.

Sec., 94 F. App'x 106, 107 (3d Cir. 2004) (substantial evidence supported ALJ finding that plaintiff could walk without a cane despite having one); Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2004) (even where the medical evidence mentioned the claimant's use of a cane and a physician had indicated that the claimant needed to use a cane, such isolated notations are "insufficient to support a finding that the claimant's cane was medically necessary"); Rivera v. Astrue, No. 08-1971, 2009 WL 235353, at *5 (E.D. Pa. Jan. 29, 2009) (same).

       In this matter, we conclude that the hypothetical question posed to the VE does not lack consideration of any of Plaintiff's impairments, and the ALJ accurately presented Plaintiff's functional limitations to the vocational expert who found Plaintiff able to work. Consequently, we find that the hypothetical posed to the VE was a full and accurate reflection of Plaintiff's impairments; as such, the VE's answer is considered substantial evidence.

## Substantial Evidence Supports the ALJ's Consideration of and Weight Assigned to the Medical Evidence of Record.

Dr. Torres

       Plaintiff argues that the ALJ erred by failing to afford proper weight to the assessment of her treating physician, Matthew Torres, M.D., as well as to the evaluation completed by examining psychologist, Terrence Paquette, Psy.D. (Pl. Br. at 17-21.) Though Plaintiff specifically contends that great weight should have been given to these opinions, as more fully explained below, this assertion is not supported by substantial evidence of record.

       Treating physician reports are to be given special significance. Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000). The Morales court stated, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a period of time.'" Id. at 317, quoting, Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), quoting, Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987).

A treating source's medical opinion is entitled to significant weight where the opinion is well-supported by medical evidence and not inconsistent with other substantial evidence.[8]  See 20 C.F.R. § 404.1527(d); see also Morales, 225 F.3d at 310, 317 (3d Cir. 2000); Plummer, 186 F.3d at 429.  Where a conflict in the evidence exists, an ALJ "is free to choose the medical opinion of one doctor over that of another."  Diaz v. Commissioner of Social Security, 577 F.3d 500, 505 (3d Cir.2009).  However, "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects."  Plummer, 186 F.3d at 429.  Furthermore, the ultimate disability determination is reserved for the ALJ and a treating physician's opinion on that topic is not entitled to any special significance.  Walker v. Barnhart, 111 Soc.Sec.Rep.Serv. 567, 568, 2006 WL 1789043, *2 (E.D. Pa. 2006), citing, 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); SSR 96-5p.

---

[8]    The regulations provide that one of the factors to be considered by the ALJ in evaluating medical opinions is the supportability of the opinion.  See 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3).  Specifically, the regulations provide that

> [t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.

20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3).  Moreover, we note that forms requiring a physician only to fill in blanks or check boxes are "weak evidence at best."  Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)(citations omitted).

Plaintiff primarily relies upon the Pennsylvania Department of Public Welfare Health-Sustaining Medication Assessment Form dated December 20, 2012 wherein Dr. Torres diagnosed Plaintiff with depression and chronic back pain.  (Record at 448-452.)  More specifically, Dr. Torres stated that with untreated depression, Plaintiff would be at risk for harming herself and would likely be debilitated enough to preclude meaningful work.  (Record at 448.)  Dr. Torres also stated that left untreated, Plaintiff's back pain is severe enough to preclude any extended physical exertion, and she has difficulty with prolonged sitting.  (Record at 448.)  Dr. Torres opined that Plaintiff was temporarily disabled beginning on December 15, 2012, and it was expected to last until December 31, 2013.  (Record at 449, 451.)

The ALJ explicitly considered the foregoing assessment of Dr. Torres (Record at 18-19), but only assigned it minimal weight.  (Record at 20.)  We find that the ALJ appropriately articulated his reasoning in applying minimal weight to the opinion of Dr. Torres by stating as follows:

> In terms of the claimant's alleged chronic back pain, Janell Hill, M.D., a treating primary care physician, diagnosed the claimant as having back pain (Exhibit 2F).  The records from Lancaster General Hospital, a treating medical provider, reveal that the claimant has pain in her lumbar back, thoracic back, and legs (Exhibits 2F and 15F).  Said records also reveal that the claimant has had physical therapy and acupuncture (Exhibits 3F and 10F). Furthermore, the records from Lancaster General Hospital show that the claimant has more low back pain with bending and lifting (Exhibit 15F).  Despite the claimant's back pain, Gladys Frye, M.D., a treating physician, noted that the claimant has normal range of motion (Exhibit 15F). The records from Lancaster General Hospital indicate that the claimant has only intermittent thoracic and lumbar pain (Exhibit 15F).  Said records also indicate that the claimant has no numbness or tingling into her legs (Exhibit 2F).

>Corey Fogleman, M.D., a treating primary care physician, stated that the claimant's straight leg test was negative bilaterally (Exhibit 8F).  Matthew Torres, M.D., a treating primary care physician, observed that the claimant has normal coordination (Exhibit 22F).  On February 8, 2013, Dr. Torres noted that the claimant had significant relief with acupuncture treatment (Exhibits 17F and 22F).

>.     .     .

>The undersigned assigns limited weight to the opinion[] of Dr. Torres (Exhibits 7F and 15F) . . . , that the claimant has had periods of temporary disability.  Said  opinions are not supported by the record as a whole and are not consistent with Dr. Torres' statement that the claimant has normal coordination (Exhibit 22F).  Moreover, said opinions concern an issue that is reserved to the Commissioner.

(Record at 18, 19.)  Having conducted a thorough review of the medical evidence, we conclude that the ALJ's determination that minimal weight should be placed on the assessment of Dr. Torres is supported by substantial evidence of record.  See 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3).[9]

Defendant's summary of the medical evidence offers additional support for the ALJ's assignment of limited weight to the opinions of Dr. Torres.  More specifically, Defendant notes as follows:

>Specifically, although Dr. Torres stated that Plaintiff's 'untreated' depression 'would likely be debilitating' (Tr. 448), the evidence demonstrated that her mental symptoms

---

[9]     As indicated *supra*, the regulations provide that when evaluating a medical opinion, an ALJ is required to examine the supportability of the opinion.  In other words, the better an explanation a source provides for an opinion, the more weight the ALJ shall give that opinion.  See 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3).

Further, conclusions about the ultimate issue of disability are appropriately reserved to the Commissioner.  See 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1), Walker v. Barnhart, 111 Soc.Sec.Rep.Serv. 567, 568, 2006 WL 1789043, *2 (E.D. Pa. 2006)(the ultimate disability determination is reserved for the ALJ and a treating physician's opinion on that topic is not entitled to any special significance).

were nowhere near that severe. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (ALJ may give less to opinion that is inconsistent with the record as a whole). Medical records showed that, on various occasions, Plaintiff was fully oriented and alert, was cooperative, had a normal mood and affect, her behavior was normal, and she had no suicidal ideation (Tr. 384-85, 393, 419, 461, 464, 471, 480, 490, 494, 855, 862, 868, 874, 904, 934, 976, 1043, 1048, 1198, 1231, 1248). In December 2012, her doctor noted that, while she had a history of depression, she was stable on medication — in sharp contrast to Dr. Torres' opinion about Plaintiff's 'untreated' depression (Tr. 464, 924). Notably, in November 2013, Plaintiff showed '[n]o sign of depression' (Tr. 1240).

Similarly, the evidence undercut Dr. Torres' drastic opinion about Plaintiff's back pain (Tr. 448). Plaintiff's physical examinations demonstrated that she had only intermittent complaints of back pain, had a normal range of motion, had no numbness or tingling in her legs, had full muscle strength, and received significant relief with conservative, acupuncture treatment (Tr. 18, 370, 376, 379, 383-84, 393, 419, 469, 471, 480, 494, 855, 862, 867-68, 874-75, 904-05, 912, 926, 961, 976, 995, 1043, 1046-49, 1198, 1231, 1248). Moreover, diagnostic tests from October 2011 — the same month as her alleged disability onset date — showed that Plaintiff's lumbar spine was normal, with normal bone mineralization, no compression deformity or spondylolisthesis, and intact joints (Tr. 425, 539, 587). As of October 2012, her physical exam showed that she 'appears well' (Tr. 918). In March 2013, Dr. Torres acknowledged that, although Plaintiff exhibited some tenderness in her spine, she had normal muscle tone, a normal range of motion, and normal coordination (Tr. 967, 1189, 1222).

(Def. Br. at 13-14.)

Plaintiff's activities of daily living further refute Dr. Torres' opinion.  The record

demonstrates that Plaintiff could concentrate long enough to pay bills and use a checkbook; take

care of all the basic needs of her children, including helping them with their homework; prepare

three-course meals; complete house chores; attend appointments; go grocery shopping; attend church on occasion; and use public transportation.  (Record at 16, 229-231, 266, 267, 274, 275, 292.)  Moreover, as explicitly noted by the ALJ, Plaintiff worked as a housekeeper at a hotel after she filed for disability benefits.  (Record at 15, 19, 220, 238, 435.)  Although the ALJ found that this work did not rise to the level of substantial gainful activity (Record at 15), we agree with Defendant (Def. Br. at 14) that it is probative of Plaintiff's ability to perform work in accordance with her RFC. See, e.g., Geyer v. Colvin, No. 12-1468, 2013 WL 5777328, at *7 (W.D. Pa. Oct. 25, 2013) ("Even work activity that does not constitute substantial gainful activity may be probative of a claimant's ability to perform the duties of a full-time job."); accord 20 C.F.R. §§ 404.1571, 416.971 (same).  Based on our review of the administrative record, the medical evidence as a whole does not support Dr. Torres' assessment that Plaintiff's impairments were completely work-preclusive.  Rather, we find substantial evidence supports the ALJ's determination that Dr. Torres' assessment was only entitled to limited weight.

Dr. Paquette

On January 30, 2013, Terrence Paquette, Psy.D., examined Plaintiff at the request of the Bureau of Disability Determination.  (Record at 706-716.)  Dr. Paquette's report indicates that the information for the evaluation was gathered from a clinical interview and behavioral observations with the Plaintiff.  (Record at 706.)  It is interesting to note, however, that with respect to reliability, Dr. Paquette noted that "[t]he voracity of the claimant's statements were somewhat in question.  She seemed to put forth limited efforts during the evaluation and it was difficult, at times, to understand what she was getting at because of the array of symptoms she would present with."  (Record at 712.)

26

Dr. Paquette diagnosed major depressive disorder, severe and recurrent; and borderline personality disorder, porvisional.  (Record at 713.)  Dr. Paquette assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 45-55, and noted that with some appropriate treatment (at that time, it was noted that Plaintiff was not involved in any mental health treatment other than receiving medication from her primary physician), considerable improvement could be expected with respect to her general functioning.  (Record at 713.)

In conjunction with the evaluation, Dr. Paquette also completed a Medical Source Statement of Ability to Do Work-Related Mental Activities.  (Record at 715-716.)  On the form, Dr. Paquette indicated that Plaintiff had marked limitations in various areas of functioning, including interacting with the public, supervisor(s), and co-workers; responding to changes in routine work settings; and responding to changes in a usual work setting.  (Record at 715.)

The ALJ explicitly considered the foregoing opinions of Dr. Paquette (Record at 19), but only assigned the report limited weight.  (Record at 19.)  We find that the ALJ appropriately articulated his reasoning in applying limited weight to the opinions of Dr. Paquette:

> The undersigned assigns limited weight to Dr. Paquette's Medical Source Statement (Exhibit 11 F).  Dr. Paquette's opinion that the claimant has up to marked restrictions is not supported by the record as a whole and is not consistent with Dr. Gransee's statement that the claimant's thought processes appeared to be reasonably clear, logical and goal-directed (Exhibit 6F).
>
> .      .      .
>
> The reliability of Dr. Paquette's Medical Source Statement was in question and was based on the claimant's subjective self-report on a one time evaluation (Exhibit 11F).

(Record at 19, 20.)  The ALJ's assignment of limited weight to the opinion of Dr. Paquette is

27

further supported by the ALJ's summary of the following medical evidence of record:

> The undersigned finds the claimant has depression based on Dr. Hill's diagnosis (Exhibit 2F). Dr. Gransee indicated that the claimant reported that she is always irritable (Exhibit 6F). Dr. Gransee also indicated that the claimant said that she could not complete the serial sevens (Exhibit 6F). Dr. Paquette stated that the claimant has some difficulty with short-term memory (Exhibit 11F). The claimant testified that she hears things and that she has anxiety attacks. The records from Lancaster General Hospital reveal that the claimant typically drinks a 6-pack of beer daily (Exhibit 15F). Despite the claimant's depression, the records from Lancaster General Hospital show that the claimant has normal behavior and normal mood and affect (Exhibit 2F). Dr. Gransee noted that the claimant's thought processes appeared to be reasonably clear, logical and goal-directed (Exhibit 6F). The records from Lancaster General Hospital on September 3, 2013 indicated that the claimant was working (Exhibit 22F). John Chuma, Psy.D., a treating psychologist, stated on September 24, 2013 that the claimant was discharged for non-compliance (Exhibit 18F). Therefore, there is some question regarding the claimant's seriousness in addressing her depression.

(Record at 19.) Having conducted a thorough review of the medical evidence, we conclude that the ALJ's determination that only limited weight should be placed on the opinion of Dr. Paquette was supported by substantial evidence of record. See 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3).

Defendant's summary of the medical evidence offers additional support for the ALJ's assignment of limited weight to the report of Dr. Paquette. More specifically, Defendant notes as follows:

> • Plaintiff's mental status was relatively benign (Tr. 384-85, 393, 419, 461, 464, 471, 480, 490, 494, 855, 862, 868, 874, 904, 934, 976, 1043, 1048,

1198, 1231, 1248).

- Her depression was stable on medication (Tr. 464, 924).

- Dr. Gransee observed during his consultative examination that Plaintiff was alert and fully oriented and her thought processes were reasonably clear, logical, and goal-directed (Tr. 440).

- Three state agency psychologists found that she had, at most, moderate limitations in only several areas of functioning (Tr. 55-56, 65-67, 77-79).

- Far from demonstrating 'marked' limitations, Plaintiff functioned well enough to care for five children; pay bills; go to appointments; prepared three-course meals; complete all of the house chores; go outside every day; use public transportation to travel; drive; shop; and work as a housekeeper after she sought disability benefits (Tr. 228-31, 238).

(Def. Br. at 18.)

GAF Scores

Plaintiff avers that the ALJ improperly discounted her GAF scored of 50 and below. (Pl. Br. at 20.) We conclude, however, that the ALJ appropriately considered this evidence when rendering his decision. (Record at 19-20.) In fact, with respect to same, the ALJ noted as follows:

The undersigned assigns limited weight to the opinions of Dr. Gransee (Exhibit 6F), Dr. Paquette (Exhibit 11F), Dr. Chuma (Exhibits 18F and 24F), and Linda Karas, M.S. (Exhibit 24F) (a treating non-acceptable medical source) that the claimant had GAF scores of 50 and below. Said opinions are not supported by the record as a whole and are not consistent with Dr. Gransee's statement that the claimant's thought processes appeared to be reasonably

29

> clear, logical and goal-directed (Exhibit 6F).  The reliability
> of Dr. Paquette's Medical Source Statement was in
> question and was based on the claimant's subjective
> self-report on a one time evaluation (Exhibit 11F).  Dr.
> Chuma's opinion was also based on a one time evaluation
> (Exhibits 18F and 24F).

(Record at 19-20.)

We agree with Defendant that the assignment of a GAF score of 50 or below is not dispositive of the issue of disability.  (Def. Br. at 16-17.)  Contrary to Plaintiff's assertion, "a GAF score of 50 or less is not dispositive on the issue of mental disability as GAF scores do 'not have a direct correlation to the severity requirements of the Social Security mental disorder listings.'"  Butler v. Astrue, No. 09-3140, 2010 U.S. Dist. LEXIS 39639, at *9-10 (E.D. Pa. April 21, 2010) (Reed, J.), citing, Gilroy v. Astrue, 351 Fed. Appx. 714 (3d Cir. 2009); 66 Fed. Reg. 50764-5 (2000)).  In fact, the Third Circuit has held that neither a GAF score of 50 nor even a GAF score of 45 is conclusive evidence of a work preclusive mental impairment.  Id., citing, Hillman v. Barnhart, 48 Fed. Appx. 26, 30 n. 1 (3d Cir. 2002) (noting that GAF score of 50 would indicate a claimant could perform some substantial gainful activity).  Based on the foregoing case law, and our review of the administrative record, we find that Plaintiff's argument on this issue is not persuasive.  The ALJ's decision to discount the GAF scores of 50 or below was supported by substantial evidence of record in that these scores were inconsistent with the medial evidence as a whole.

Again, we find further support for this conclusion in Defendant's summary of the medical evidence of record.  More specifically, Defendant notes as follows:

> [T]he medical records demonstrated Plaintiff was fully
> oriented and alert, was cooperative, had a normal mood and

30

affect, her behavior was normal, and she had no suicidal
ideation (Tr. 384-85, 393, 419, 461, 464, 471, 480, 490,
494, 855, 862, 868, 874, 904, 934, 976, 1043, 1048, 1198,
1231, 1248).  Her doctor noted that her depression was
stable on medication (Tr. 464, 924) and, in November
2013, Plaintiff showed '[n]o sign of depression' (Tr. 1240).

In accordance with those records, Dr. Gransee observed
during his consultative examination that Plaintiff was alert
and fully oriented and her thought processes were
reasonably clear, logical, and goal-directed (Tr. 440). The
findings of the three state agency medical consultants who
reviewed her records also contradicted Plaintiff's lower
GAF scores (Tr. 55-56, 65-67, 77-79). Finally, Plaintiff's
activities of daily living were inconsistent with her GAF
scores: she took care of her five children; paid bills;
attended appointments; prepared three-course meals;
completed all of the house chores; went outside every day;
picked up her children from places; walked and used public
transportation to travel; was able to drive; shopped in
stores, and even worked as a housekeeper after her alleged
disability onset date (Tr. 228-31, 238).

(Def. Br. at 17.)

State Agency Physicians

On March 30, 2012, Jonathan Gransee, Psy.D., a consultative psychologist,

conducted a clinical psychological disability evaluation of the Plaintiff.  (Record at 435-447.)

During the examination, he noted that Plaintiff's posture, bearing, and hygiene appeared to be

within normal limits, and her eye contact was adequate.  (Record at 439.)  Her speech was well-

formed and appropriate.  (Record at 439.)   Dr. Gransee noted that Plaintiff was relatively

pleasant in the beginning of the evaluation, but once she detected that he was not necessarily

accepting everything she was saying as the truth, she became angry, defensive, and much less

cooperative.  (Record at 439.)

Dr. Gransee found that Plaintiff's thought processes appeared to be reasonably clear, logical, and goal-directed.  (Record at 440.)  There was no evidence for loose association, flight of ideas, or other specific formal thought disorder.  (Record at 440.)  Plaintiff denied any suicidal plans or attempts at the evaluation, and she denied homicidal ideation.  (Record at 440.)  Plaintiff was alert and oriented in all three spheres, but her ability to think abstractly was poor and her intelligence appeared to be in the low average range.  (Record at 440.)  Dr. Gransee found that Plaintiff's memory appeared to be good.  (Record at 441.)

Dr. Gransee noted that Plaintiff has anger management issues, violent behaviors, and her social judgment appeared to be impaired.  (Record at 441.)  Overall, Dr. Gransee found that the reliability of the information provided was questionable.  More specifically, he noted that Plaintiff seemed to "have an agenda coming into the evaluation, and her attitude and mood shifted significantly when this psychologist questioned some of what she stated, suggesting this underlying agenda." (Record at 441.)

Dr. Gransee diagnosed Plaintiff with depressive disorder, not otherwise specified; intermittent explosive disorder; and history as a victim of physical abuse.  (Record at 442.)  Dr. Gransee opined that Plaintiff had moderate restrictions on her ability to understand, remember, and carry out short, simple instructions and detailed instructions.  (Record at 445.)  She was only slightly limited in her ability to make judgments on simple work related decisions.  (Record at 445.)  He also found that Plaintiff had moderate restrictions on her ability to interact appropriately with the public, supervisors, and coworkers.  (Record at 445.)  He found moderate restrictions on her ability to respond appropriately to work pressures in a usual or routine work setting.  (Record at 445-446.)

The ALJ assigned Dr. Gransee's opinions great weight because they were consistent with the overall record.  (Record at 19.)  More specifically, with respect to the state agency consultants in this matter, the ALJ found as follows:

> The undersigned generally assigns great weight to the Psychiatric Review Techniques and Mental Residual Functional Capacity Assessments of Dr. Small, Sharon Tarter, Ph.D, and Melissa Diorio, Psy.D. (non-examining DDS psychologists) (Exhibits 2A, 4A and 6A). The opinions of Dr. Small, Dr. Tarter, and Dr. Diorio that the claimant has no worse than moderate limitations are supported by the record as a whole and are consistent with Dr. Gransee's statement that the claimant's thought processes appeared to be reasonably clear, logical and goal-directed (Exhibit 6F).  The undersigned generally assigns great weight to Dr. Gransee's Medical Source Statement  (Exhibit 6F).  Dr. Gransee's opinion that the claimant has no worse than moderate restrictions is supported by the record as a whole and is consistent with Dr. Gransee's statement that the claimant's thought processes appeared to be reasonably clear, logical and goal-directed (Exhibit 6F).

(Record at 19.)

The ALJ, who is the finder of fact, was entitled to give greater weight to the opinions of the aforementioned state agency psychological consultants.  (Record at 19.)  See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991) (finding that the Commissioner reasonably relied upon the findings of a state agency physician in giving less than controlling weight to a treating physician's opinion).  See 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I) (providing that state agency examiners are highly qualified and are experts in Social Security disability evaluation).  We conclude that the ALJ followed the case law and regulations pertaining to state agency physicians and reasonably afforded more weight to the findings of Drs.

Small, Tarter, Diorio, and Gransee.

Under the regulations, an ALJ may consider numerous factors in assessing the opinion of a medical source, including the evidence supporting the opinion, the consistency of the opinion with the record as a whole, and other relevant factors.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In his decision, the ALJ thoroughly discussed the examinations conducted by all of the physicians in this case, including the assessments of Drs. Torres and Paquette.  (Record at 18-20.)  Based on our thorough review of the administrative record, we find that the ALJ acted in accordance with his responsibility to determine the credibility of medical evidence, and he gave specific, legitimate reasons for discrediting the opinions of Drs. Torres and Paquette.

### Substantial Evidence Supports the ALJ's Credibility Determination

Plaintiff contends that the ALJ erred in her credibility assessment.  (Pl. Br. at 22-25.)  We conclude, however, that ALJ based his finding on the medical reports, the medical history, the findings made on examination, the claimant's assertions concerning her ability to work, the claimant's description of her activities and lifestyle, and in light of the degree of medical treatment required.  (Record at 17-20.)  Nonetheless, Plaintiff argues that the ALJ's credibility assessment was not supported by substantial evidence.

Credibility determinations regarding a claimant's statements concerning pain and other subjective complaints are reserved for the ALJ.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  An ALJ's credibility determination must be supported by substantial evidence on the record as a whole.  See Miller v. Commissioner of Social Security, 172 F.3d 303, 304 n.1 (3d Cir. 1999).  The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole, including inconsistencies in the claimant's testimony.  Wilson v.

Apfel, No. 98-6511, 1999 U.S. Dist. LEXIS 16712, at *11-12 (E.D. Pa. October 29, 1999)

(Kelly, J.), aff'd, 225 F.3d 651 (3d Cir. 2000).

Allegations of pain and other subjective symptoms must be supported by objective

evidence.  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  The regulations governing the

evaluation of pain and other subjective complaints provide that a claimant's statements about her

impairments will not alone serve to establish disability.  20 C.F.R. § 404.1529(a).

The regulations describe a two-step process to determine whether a claimant is

disabled by subjective symptoms, including pain.  First, the claimant must make a threshold

showing that there are medical signs and laboratory findings showing that she has a medical

impairment which could reasonably be expected to produce the pain or other symptoms alleged

and which, when considered with all the other evidence, would lead to a conclusion of disability.

Id.  If the medical signs or laboratory findings show that the claimant has a medically

determinable impairment that could reasonably be expected to produce the alleged symptoms, the

ALJ must then evaluate the intensity and persistence of the symptoms to determine whether they

limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  This requires the ALJ to

assess the degree to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.  Hartranft, 181 F.3d at 362, citing, 20 C.F.R. § 404.1529(c).

In determining the credibility of a claimant's subjective complaints, including

pain, the ALJ must take into consideration the available record evidence, including the medical

evidence, the claimant's statements about her symptoms, physician statements, and information

provided about the claimant's symptoms and how they affect the claimant, and other relevant

evidence.  20 C.F.R. § 404.1529(c)(2), (3).

35

In this case, having found that Plaintiff's conditions were capable of causing some of the type of symptoms she alleged, the ALJ proceeded to consider the intensity and persistence of Plaintiff's alleged symptoms and the extent to which they affected her ability to work. (Record at 18.)  The ALJ further noted Plaintiff's testimony and statements concerning her alleged impairments, but concluded that those subjective complaints were not fully credible. (Record at 18-20.)

We conclude that the ALJ's determination with respect to the credibility of the Plaintiff is supported by substantial evidence of record.  In making his credibility determination, the ALJ explicitly considered the statements of the Plaintiff by noting as follows:

> The claimant alleged that she has chronic back pain and depression (Exhibit 7E).  She testified that she has pain in her low back, neck, left shoulder, and middle of her back. The claimant noted that she has a hard time dealing with people (Exhibit 4E).  She also noted that she uses a cane and that she has attended physical therapy (Exhibit 4E). The claimant stated that she takes medications for wheezing, back pain and depression (Exhibit 12E). However, she indicated that her medications cause anxiety, mood swings and paranoia (Exhibit 4E and claimant's testimony).

(Record at 18.)  After considering Plaintiff's statements and reviewing the medical records pertaining to the Plaintiff (Record at 17-20), the ALJ concluded as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Record at 18.)   We conclude that the ALJ appropriately noted the degree of medical treatment

36

required, the medical reports, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work. (Record at 18-20.)

Based upon our independent review of the record, we also find that Plaintiff's testimony concerning her subjective complaints was not entirely credible based on her activities of daily living, social interaction, and statements made to certain medical providers. The evidence of record demonstrated that despite Plaintiff's alleged disabling impairments, she was able to attend various appointments on a daily basis, shop in public and attend church on occasion, care for her five children everyday, including assisting them with homework, spend time with her family, including laughing and talking on the phone, prepare three-course meals, complete house chores, and use public transportation. (Record at 16, 31, 168, 177, 182, 228-231, 234, 266-269, 273-275, 291-292, 709.) With respect to her alleged physical impairments, physical examinations revealed that she had only intermittent complaints of back pain, had a normal range of motion, normal coordination, had no numbness or tingling in her legs, had full muscle strength, and received significant relief with conservative, acupuncture treatment. (Record at 18, 370, 376, 379, 383-84, 393, 419, 469, 471, 480, 494, 855, 862, 867-68, 874-75, 904-05, 912, 926, 961, 967, 976, 995, 1043, 1046-1049, 1189, 1198, 1222, 1231, 1248.) With respect to her mental impairments in particular, we note that Plaintiff did not have any psychiatric hospitalizations or intensive outpatient treatments, and received only limited mental health treatment during the relevant period, which treatment consisted solely of therapy visits and medication prescriptions obtained from her primary care physician. (Record at 17, 707, 713.)

Further, we note that the ALJ did not totally discount all of Plaintiff's subjective complaints, but rather accommodated them to the extent they were consistent with the overall

record.  (Record at 17-20.)  The ALJ reasonably accommodated Plaintiff's impairments by finding, in her RFC assessment, that Plaintiff should be restricted to light work, and further limited to simple, routine and repetitive tasks in a work environment free from fast paced production involving only simple work related decisions with few, if any, work place changes, no interaction with the public, occasional interaction with co-workers, with no tandem tasks, occasional supervision, alternate sitting and standing at will, occasional climbing of stairs, balancing, stooping, kneeling, crouching and crawling, and must never climb ladders or perform overhead reaching with her left upper extremity.  (Record at 17, Finding No. 5.)  See, e.g. Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986) (stating that an individual is not required to be pain-free or experiencing no discomfort in order to be found not disabled).  Accordingly, we find that the ALJ reasonably accommodated Plaintiff's subjective complaints.

Plaintiff further alleges that the ALJ's decision is not supported by substantial evidence because the ALJ did not credit the written statement[10] (Record at 265-272) submitted by her husband, Gregory Pettway.  (Pl. Br. at 24-25.)  For the following reasons, we disagree with Plaintiff and conclude that the ALJ did properly consider this statement when evaluating Plaintiff's claim.

In reaching a decision, the ALJ must consider all of the relevant evidence in the record.  Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984); Cotter v. Harris, 642 F. 2d 700, 705 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407, (3d Cir. 1979); Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978).  Consideration of all the evidence, however, does not mean

---

[10]     Plaintiff's husband completed a Function Report-Adult-Third Party on January 9, 2013.  (Record at 265-272.)

that the ALJ must explicitly refer to each and every exhibit in the record, nor does it mean that an

ALJ must specifically mention every statement made by a witness.  Mays v. Barnhart, 227 F.

Supp. 2d 443, 448 (E.D. Pa. 2002 (Baylson, J.).  See 20 C.F.R. § 404.1513(d)(4) (an ALJ "may"

use evidence from other sources such as relatives and friends to determine the severity of an

impairment); SSR 96-7p (an ALJ "may" draw credibility inferences and conclusions from family

and friends); SSR 06-03p (same).  See also Campbell v. Shalala, No. 93-cv-0181, 1993 U.S.

Dist. LEXIS 15832, at *11 n.3 (E.D. Pa. Nov. 1, 1993) ("The task of this Court in reviewing the

ALJ's decision is not to determine whether he explicitly mentioned every piece of evidence in his

opinion (a requirement that would impose an almost impossible burden not only on ALJs but

also on reviewing courts), but rather to determine whether the ALJ's findings were supported by

substantial evidence.").

   In addition, courts in this district have also found that "there is no requirement,

statutory or otherwise, that the ALJ make an explicit credibility finding of any lay witness."

Watson v. Astrue, 2009 U.S. Dist. LEXIS 91628, at * 11 (E.D. Pa. Feb. 18, 2009) (Sitarski,

M.J.), approved and adopted by Watson v. Astrue, 2009 U.S. Dist. LEXIS 20751 (E.D. Pa.

March 13, 2009) (Diamond, J.) (citations omitted).

   In this matter, the ALJ did explicitly review the statement of Plaintiff's husband,

concluding as follows:

> The statements of the claimant's husband, Gregory
> Pettway, in the Third Party Function Report (Exhibit 9E)
> essentially mirror the claimant's statements in the Function
> Report (Exhibit 4E).  The undersigned finds the claimant
> and the claimant's husband to be not fully credible.

(Record at 19.)  We agree, based on our review of the record, that the written statement is

39

cumulative of the evidence already considered by the ALJ.  (Record at 17-20.)  More specifically, the statement from Plaintiff's husband reported that Plaintiff's conditions caused her, *inter alia*, to experience difficulty sitting or standing for long periods, and trouble concentrating at times. (Record at 265.)  The ALJ already fully considered these same contentions because Plaintiff provided similar testimony during the administrative hearing.  (Record at 31-43.)

The ALJ considered the record evidence, followed the two-step analysis outlined in the regulations, and relied on substantial evidence to support her finding that Plaintiff's subjective complaints were not fully credible.  Further, this Court has independently reviewed the record and has found substantial evidence in support of the ALJ's credibility determination.  This Court has fully considered all of Plaintiff's arguments and finds no basis to undermine the ALJ's credibility determination.  Consequently, we defer to the ALJ's credibility determination.

## VI.  CONCLUSION

Having reviewed the evidence of record, we find it is clear that substantial evidence exists to support the opinion and conclusions of the ALJ as to this Plaintiff's alleged disability.  Plaintiff has failed to demonstrate that there was some medically determinable basis for an impairment that prevented her from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1).  Therefore, I make the following:

40

**RECOMMENDATION**

AND NOW, this    8th    day of April, 2016, it is RESPECTFULLY

RECOMMENDED that the relief sought by Plaintiff be DENIED and the decision of the

Commissioner of Social Security be AFFIRMED.


BY THE COURT:


*/s/ Henry S. Perkin*
HENRY S. PERKIN,
United States Magistrate Judge